**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | |
|---|---|
| **DAVID MELCHER,** *on behalf of* *himself and all others similarly situated,* ) ) ) | |
| **Plaintiff,** ) ) | **Case No. 1:21-cv-00409-HAB-SLC** |
| **v.** ) ) | |
| **CENTRAL STATES ENTERPRISES,** *et al.,* ) ) ) | |
| **Defendants.** ) | |

**OPINION AND ORDER**

Before the Court are three motions to intervene. The first motion to intervene was filed by Douglas Dealey, Kees Grain Farms, Inc., Marcarl Farms, Inc., Matthew B. Mercer, Derek Miller, Schlemmer Farms, LLC, and Straley & Son Farms, LLC, via counsel Steve Diller ("Diller Intervenors") on August 25, 2023. (ECF 61). A motion to amend the motion to intervene, which the Court deems to be a second motion to intervene, was filed the same day by the Diller Intervenors. (ECF 62).[1] Defendant Central States Enterprises ("CSE") timely filed a response on September 18, 2023 (ECF 66), and Defendant Larry Shepherd joined in that response on that same day (ECF 67).[2] The Court subsequently entered an Order directing the Diller Intervenors to file their proposed complaint, affording Defendants until November 7, 2023, to file a revised response, if any, and taking the motion to intervene under advisement. (ECF 69).

---

[1] The Court cannot discern the difference between the two documents, and thus, the Court will deny the first motion to intervene (ECF 61) as moot, solely focusing on the second motion to intervene (ECF 62).

[2] Because Shepherd joined CSE's objection to the motion to intervene, it appears both Defendants oppose intervention. Thus, the Court will refer to these two parties as "Defendants," unless otherwise specified.

The Diller Intervenors filed their proposed complaint on October 31, 2023. (ECF 77). Defendant CSE filed a revised response on November 7, 2023 (ECF 79), which Defendant Shepherd joined that same day (ECF 81). The Diller Intervenors filed a reply on September 25, 2023 (ECF 68), making the matter ripe for adjudication.

On October 31, 2023, Theobald Farms, Inc., Kneubuhler Farms, Inc., Rodney Nahrwold, James Hockemeyer, Ridenour Farms, Inc., Timothy Rorick, S.J.K. Farms, LLC, Little River Farms, Inc., Rob Burnau (Burnau Farms), Kelham Farms, Inc., Joe Malfait Farms, Inc., and TLC Farms, Inc. ("Schwartz Intervenors"), filed a second motion to intervene and proposed intervenor complaint via counsel John Schwartz (ECF 73, 76), adopting the motion to intervene filed by the Diller Intervenors.[3] Defendant CSE filed a response on November 14, 2023 (ECF 82), adopting its response to the first motion to intervene. On November 27, 2023, the Schwartz Intervenors filed their reply to the motion to intervene. (ECF 88). Several days later, on December 4, 2023, Defendant CSE filed a motion for leave to file a surreply (ECF 89), arguing that the Schwartz Intervenors introduced new arguments in their reply. The Court granted that motion on January 18, 2024, and permitted Defendant CSE to file its surreply. (ECF 90). On January 24, 2024, Defendant CSE filed its surreply, to which Defendant Shepherd joined in two days later (ECF 92), making the Schwartz Intervenors' motion to intervene also ripe for ruling.

For the following reasons, the Court will GRANT both the Diller Intervenors' second motion to intervene (ECF 62) and the Schwartz Intervenors' motion to intervene (ECF 73).

## I. BACKGROUND

Plaintiff filed a class action complaint against Defendants on November 2, 2021, alleging several violations of the Commodity Exchange Act (CEA), a violation of the Uniform

---

[3] Because the Schwartz Intervenors joined the Diller Intervenors' motion to intervene, the Court will refer to both groups as "Intervenors," unless otherwise specified.

Commercial Code, and a state law unjust enrichment claim, stemming from Plaintiff's contracts with Defendants. (ECF 1). Defendant CSE filed a motion to dismiss, or in the alternative, stay and compel arbitration (ECF 16), to which Defendant Shepherd joined in (ECF 19). The Court denied that motion on March 30, 2023, concluding that summary trial on the issue of contract formation and arbitration between the parties must be resolved by summary trial under 9 U.S.C. § 4. (ECF 48). Following denial of the motion to dismiss, or in the alternative, stay and compel arbitration, the parties reported engaging in settlement negotiations on May 19, 2023. (ECF 52, 54, 56, 58).

On August 25, 2023, the Diller Intervenors filed the motion to intervene in this matter (ECF 62), just four days before Plaintiff and Defendants filed a stipulation to dismiss the case (ECF 63). Two months later, on October 31, 2023, the Schwartz Intervenors filed a motion to intervene and proposed intervenor complaint (ECF 73, 76), stating that, they too, have the same claims as Plaintiff and Diller Intervenors and seeking to incorporate by reference the Diller Intervenors' motion to intervene (ECF 62).

The Intervenors request to intervene as a matter of right under Rule 24(a) or under Rule 24(b) as a matter of permissive intervention, contending they share in the same claims Plaintiff brought against Defendants. (*Id.* at 1-2). Specifically, they argue that this litigation stems from two types of contracts: accumulator contracts, which are the "main" contracts, and "hedge to arrive" ("HTA") contracts, which are created by the accumulator contracts, all of which were utilized by Defendants in their dealings with farmers, including Plaintiff and the Intervenors. (*Id.* at 6; *id.* at 6 n. 1).[4] The accumulator contracts do not have an arbitration provision, but the HTA contracts do. (ECF 62 at 6). Pursuant to the HTA contracts, Defendants claim that Plaintiff and

---

[4] The Court laid the background facts of this case at length in its March 30, 2023, Opinion and Order (ECF 48 at 4-10).

the Intervenors are required to pursue their claims through arbitration with the National Grain and Feed Association ("NGFA") rather than litigating their claims in this Court. (*Id.*).

In contrast, and like Plaintiff, the gist of the Intervenors' claims is that many of the HTA contracts—which allegedly contain an arbitration clause—were unsigned by CSE and the Intervenors, and thus, there is no agreement to arbitrate. (*Id.*). They further represent that, as Plaintiff, they dispute that they should be compelled to arbitrate their claims against Shepherd because he is not a NGFA member and/or has not contractually agreed to arbitrate with the Intervenors. (*Id.*). Lastly, the Schwartz Intervenors, specifically, contend that they also seek to determine whether the accumulator contracts, which were "part and parcel" of those utilized by Plaintiff, are subject to the Commodity Fund Trade Commission (CFTC) and whether they violate the CEA. (ECF 88 at 12). Thus, the Intervenors state that they, too, have disputes regarding the arbitration of "accumulator" contracts against Defendants, "[s]o much so, the Intervenors desire to incorporate all the claims and defenses in [their] Complaint as stated by [Plaintiff] with respect to the issue of arbitration." (ECF 62 at 4; *see* ECF 76, 77).

## II. LEGAL STANDARD

To intervene as a matter of right under Federal Rule of Civil Procedure 24(a), a party must show: (1) "timeliness"; (2) "an interest relating to the property or transaction which is the subject of the action"; (3) that "the applicant [is] so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest"; and (4) that "existing parties [are] not . . . adequate representatives of the applicant's interest." *Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 945-46 (7th Cir. 2000) (citations omitted). "In addition, at some fundamental level the proposed intervenor must have a stake in the litigation." *Id.* at 946.

4

A party may also move for permissive intervention under Rule 24(b), "upon timely application, 'when an applicant's claim or defense and the main action have a question of law or fact in common.'" *Id.* at 949 (citing Fed. R. Civ. P. 24(b)). A party seeking to intervene under Rule 24(b) must also establish an independent basis for subject matter jurisdiction. *Pension Benefit Guar. Corp. v. Slater Steels Corp.*, 220 F.R.D. 339, 341 (N.D. Ind. 2004) (citing *Sec. Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1381 (7th Cir. 1995)).[5] "Permissive intervention under Rule 24(b) is wholly discretionary . . . ." *Babbitt*, 214 F.3d at 949 (citation omitted).

Whether a party moves to intervene under Rule 24(a) or (b), the "motion to intervene must be . . . . accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c).

### III. TIMELINESS[6]

*A. Effect of the Stipulation to Dismiss*

As a threshold matter, Defendants raise an issue which the Court will address preliminarily. They argue that, because a stipulation to dismiss was filed in this case, the motion to intervene is automatically rendered moot. (ECF 66 at 16-17). They state that the stipulation to dismiss was "effective without court order" because it is "self-executing" and that the Intervenor's consent to file the stipulation was not necessary. (*Id.*). They cite to legal authority from other circuits for the proposition that a stipulation to dismiss would moot a motion to intervene, even if a stipulation of dismissal was filed *after* a motion to intervene. (*Id.* at 17).

---

[5] Subject-matter jurisdiction is not at issue here because the Intervenors advance claims under federal law and because the Court would have supplemental jurisdiction over the state law claims. (*See* ECF 76 at 37-46; ECF 77 at 37-46).

[6] Because timeliness is a requirement under Rule 24(a) and (b), and because it is the most contentious issue in the parties' briefing, the Court will analyze this factor separately and proceed in analyzing the remaining factors of Rule 24(a) and (b), in turn.

In their reply, the Intervenors contest that such a brightline rule exists. (ECF 68 at 3). Rather, they argue that, in evaluating timeliness, the most important consideration is the "extent of prejudice to the original litigating party" (*Id.* at 2-3 (citing *City of Bloomington v. Westinghouse Elec. Corp.*, 824 F.2d 531, 535 (7th Cir. 1987))), and that Defendants have not pointed to any prejudice. Specifically, they state that the linchpin of the timeliness analysis in cases involving settlements is whether there were settlement discussions that were "lengthy and difficult." (*Id.* at 4). The Intervenors further argue that the length of time between the filing of their motion to intervene and evidence that the parties settled—three and half months at most—is quite short contrarily to the cases cited by Defendants. (*Id.* at 3-4).

Courts have repeatedly stated that there is no brightline rule for evaluating the timeliness of a motion to intervene. *See, e.g.*, *Hagen v. Van's Lumber & Custom Builders Inc.*, No. 06-C-122, 2006 WL 3404772, at *4 (E.D. Wis. Nov. 22, 2006) ("[T]he boundary surrounding intervention as of right is not a bright line."). And certainly, the Court is unaware of any such brightline rule existing in this Circuit. Quite the contrary, a cursory review of the case law reveals that courts in this Circuit and beyond have permitted intervention after the filing of a stipulation to dismiss in several instances. *See, e.g.*, *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394-396 (1977) (holding that "once the entry of final judgment made the adverse class determination appealable, [McDonald] quickly sought to enter the litigation," and that the "critical inquiry . . . is whether in view of all the circumstances the intervenor acted promptly after the entry of final judgment."); *Ali v. City of Chi.*, 34 F.4th 594, 600 (7th Cir. 2022) (granting motions to intervene when filed after entry of judgment, where the judgment making an adverse class determination became appealable, the class was not certified as a class action, and the proposed intervenors would have been part of the proposed class); *Flying J, Inc. v. Van*

6

*Hollen*, 578 F.3d 569, 572 (7th Cir. 2009) ("Nor do we think the association's motion to intervene, even though not filed until the district judge had entered his final judgment, was untimely—assuming that all the association wants is to take an appeal . . . ."); *Merrick v. Wal-Mart Supercenter*, No. 3:06-CV-292 RM, 2007 WL 1742194, at *2 (N.D. Ind. June 13, 2007) (granting prospective intervenor's motion to intervene three months after judgment was entered, when plaintiff's counsel informed prospective intervenor the complaint was dismissed).

In essence, in considering timeliness, the Seventh Circuit "give[s] significant weight to the fact that the motion to intervene was filed within the time limit for filing a notice of appeal," *Lopez-Aguilar v. Marion Cnty. Sheriff's Dep't*, 924 F.3d 375, 389 (7th Cir. 2019) (footnote omitted), or that a proposed intervenor reasonably relied on a party seeking class certification, when the case was filed as a proposed class action. *Ali v. City of Chi.*, No. 1:19-CV-00022, 2021 WL 1193791, at *2 (N.D. Ill. Mar. 24, 2021) ("[T]he case filed by Ali never presented an operative complaint with a proposed class action. So, unlike the putative class members in the cited cases, Miller did not reasonably rely on Ali's case to pursue class certification."), *aff'd*, 34 F.4th 594 (7th Cir. 2022). Here, because the Intervenors are seeking a determination of the issue of class certification in this putative class action, a stipulation to dismiss will not render a motion to intervene untimely. *See id.*[7] The Court will, therefore, move on to the timeliness analysis.

*B. Timeliness Analysis*

Turning to the timeliness inquiry, courts evaluate four factors to determine whether a motion to intervene is timely: "(1) the length of time the intervenor knew or should have known of his interest in the case; (2) the prejudice caused to the original parties by the delay; (3) the prejudice to the intervenor if the motion is denied; [and] (4) any other unusual circumstances."

---

[7] In fact, the Court is unaware of a rule in this Circuit permitting a retroactive application of a stipulation to dismiss to a motion to intervene, as Defendants suggest.

*Ali*, 34 F.4th at 599 (quoting *State v. City of Chi.*, 912 F.3d 979, 984 (7th Cir. 2019)). Put differently, courts evaluate the reasonableness of a party's request for intervention. *Id.* ("[P]otential intervenors need to be reasonably diligent in learning of a suit that might affect their rights, and upon so learning they need to act reasonably promptly." (quoting *Lopez-Aguilar*, 924 F.3d at 388)). "[T]imeliness is not limited to chronological considerations but is to be determined from all the circumstances." *Id.* (citation and internal quotation marks omitted). "[T]he timeliness of a motion to intervene is committed to the sound discretion of the district judge." *United States v. City of Chi.*, 908 F.2d 197, 199 (7th Cir. 1990) (citation and internal quotation marks omitted).

   1. <u>Length of time the Intervenors knew or should have known of their interests</u>

As for the first factor of the timeliness inquiry, Defendants argue that intervention would be untimely because the Intervenors, by their own admission, have known about their interests in the case from its outset (meaning two years ago), have known of the potential for dismissal since Defendants filed their motion to dismiss on January 20, 2022, and at the latest since the parties reported engaging in settlement discussions in May 19, 2023, seven and three months respectively, before the first motion to intervene was filed. (ECF 66 at 7-8).[8]

The Intervenors explain that they have been in contact with Plaintiff's counsel throughout the pendency of this case and "discussed the possibility of intervening but at the suggestion of [Plaintiff's] counsel . . . deferred intervention so as to perhaps not delay or adversely affect the issue of class certification . . . ." (ECF 62 at 2). The Intervenors further state that once the settlement and dismissal were imminent, it became "clear that summary trial pursuant to Federal Arbitration Act § 4 as well as any class certification [would] not occur in this case unless

---

[8] Defendants advance other arguments regarding timeliness which appear in the later part of their briefs and which the Court deems more appropriate for later analysis.

intervention is granted." (*Id.*). Thus, in their view, they knew or should have known that they had an interest in intervening on June 1, 2023, when Defendants reported to the Court that they reached a settlement agreement. (ECF 68 on 6-7; *see* ECF 54).

They also explain that they did not believe their interests were impacted until after resolution of the motion to dismiss and after report of settlement discussions because, up until that point, the Court could still rule on the issue of class certification, which in turn would have permitted the Intervenors to participate in the case under Rule 23(d). (ECF 68 at 7; *see* ECF 88 at 3). Finally, they attribute the length of time between discussions of settlement and the filing of their motion to intervene to the need to assess "what would be the most efficient method of advancing the determination of the issue of arbitration," and to the need to coordinate intervention between seven parties, a task they argue, takes time. (ECF 62 at 5; ECF 68 at 11).

On this point, the Schwartz Intervenors insist that getting twelve people on the same page for litigation is "no small feat," that they needed time to generate a new complaint, and that the settlement reports occurred at the start of the harvest season "which is practically the busiest time of the year for farmers." (ECF 88 at 3). The Schwartz Intervenors also attribute their delay in filing their motion to intervene—two months after the Diller Intervenors—to the fact that they initially waited to see whether the Court allowed intervention by the Diller Intervenors, but that the NGFA initiated arbitration because they had not intervened, which left the Schwartz intervenors "no choice but to seek intervention." (*Id.*).

Timeliness is measured "from when the applicant has reason to know its interests *might* be adversely affected, not from when it knows for certain that they will be." *State*, 912 F.3d at 981; *see also Heartwood, Inc. v. U.S. Forest Serv., Inc.*, 316 F.3d 694, 701 (7th Cir. 2003) ("The relevant inquiry in determining timeliness, however, is not on the time between the settlement

and the motion to intervene, but instead is on the time between the [intervenors'] knowledge that the suit *could* impact their interests and the motion to intervene." (emphasis added)). This standard "imposes an objective 'reasonableness standard,' asking whether potential intervenors were 'reasonably diligent in learning of a suit.'" *Cook Cnty., Ill. v. Mayorkas*, 340 F.R.D. 35, 43 (N.D. Ill. 2021), *aff'd sub nom. Cook Cnty., Ill. v. Texas*, 37 F.4th 1335 (7th Cir. 2022).

      "That said, the timeliness rules are more forgiving where the lawsuit is a class action and the intervenor is a putative or actual class member," because "unnamed class members may reasonably presume, at least until events prove the presumption inaccurate, that their interests are being adequately represented by the class representatives." *Kostovetsky v. Ambit Energy Holdings, LLC*, 242 F. Supp. 3d 708, 729 (N.D. Ill. 2017) (collecting cases); *Crawford v. Equifax Payment Servs.*, 201 F.3d 877, 880 (7th Cir. 2000) (measuring timeliness of intervention from the moment that "class members suspect that the representative is not acting in their best interests," where the absent class members sought intervention to oppose a proposed settlement that awarded them no damages and that barred them from pursuing parallel class actions they had already initiated); *Mayorkas*, 340 F.R.D. at 44; *Planned Parenthood of Wis., Inc. v. Kaul*, 942 F.3d 793, 799 (7th Cir. 2019) ("Where the prospective intervenor and the named party have the same goal . . . there is a rebuttable presumption of adequate representation that requires a showing of some conflict to warrant intervention." (internal quotation marks omitted)); *Illinois v. Chicago*, 912 F.3d 979, 985 (7th Cir. 2019) ("[I]intervention may be timely where the movant promptly seeks intervention upon learning that a party is not representing its interests."). Further, "where a party has failed to intervene because she reasonably expected named plaintiffs or other relevant parties to protect her interests, that expectation is relevant to the timeliness inquiry." *Ali*, 34 F.4th at 601 (collecting cases); *see also Van Hollen*, 578 F.3d at 572 (concluding the motion

to intervene was timely although it was filed after judgment was rendered because, among other reasons, "there was nothing to indicate that the [plaintiff] was planning to throw the case—until he did so by failing to appeal").

The fact that the Intervenors—putative class members—withheld earlier intervention at the request of Plaintiff's counsel is therefore relevant here. Plaintiff's counsel advised deferring intervention "so as to not delay or adversely affect the issue of class certification," suggesting that up until a settlement agreement would be reached, the parties could still seek a ruling on the class certification issue. (*See* ECF 68 at 6). At the same time, Plaintiff's counsel (who is now counsel for the Schwartz Intervenors) represents that he was only serving in his capacity as local counsel for Plaintiff, "had practically little involvement in the settlement negotiations (if hardly any)" (ECF 88 at 3), and was only presented the final settlement agreement in August 2023, when he seemingly informed the Diller Intervenors of this turn of events. (ECF 62 at 5 ("Once it was conveyed that Melcher had reached a settlement agreement with the Defendants by his counsel and that it was just a matter of finalizing the details of that settlement, the Proposed Intervenors met to determine what would be the most efficient method of advancing the determination of the issue of arbitration and decided to request to intervene in this case."); ECF 88 at 2-3).

Thus, regarding the Diller Intervenors, it was reasonable to withhold intervention until after initial reports of settlement discussions because it only became clear at that point through Plaintiff's counsel's representations that Plaintiff's and the Intervenors' interests no longer aligned. *Romasanta v. United Airlines, Inc.*, 537 F.2d 915, 918 (7th Cir. 1976) ("Petitioner could reasonably rely on [plaintiff's counsel's] representation and therefore her delay in filing the petition to intervene was excusable."), *aff'd sub nom. McDonald*, 432 U.S. 385; *Heartwood, Inc.*,

316 F.3d at 701; *see Romasanta*, 537 F.2d at 918  ("[P]etitioner's application was timely within the rule because she was not advised until October 17th that the plaintiffs would not appeal from Judge Perry's final order." (footnote omitted)). Further, the fact that the motion to intervene required some logistical arrangements between the parties is reasonable, especially given the number of proposed intervenors.

As for the Schwartz Intervenors, the Court is satisfied that they only knew they had an interest in intervening from the time the NGFA compelled arbitration, which was only initiated "because they had not sought intervention" (ECF 88 at 3), and that the delay in filing their motion to intervene was in turn attributed to the challenges of bringing several potential intervenors together in the midst of the harvest season. In sum, taking the circumstances together, *Ali*, 34 F.4th at 599, the Court finds that the Intervenors were diligent and acted promptly when they knew or should have known that they had an interest in intervening, meaning, when it appeared Plaintiff no longer represented their interests.

2. <u>Prejudice to the original parties if the motion is granted</u>

As for the second factor, the prejudice caused to the parties due to the delay, the Intervenors suggest that intervention would, in fact, benefit Defendants because "any work performed by Defendants until now will apply to the claims of the Intervenors." (ECF 62 at 7). They further assert that, because the Court has already ruled on the motion to dismiss, "the next step is to address whether or not arbitration is required." (*Id.*). They argue that, should their motion to intervene be denied, they and Defendants will all go back to "square one." (*Id.*). They further explain that any prejudice would be Defendants' "own fault" because they could have sought the issue of class certification, which would have obviated the need for this motion to intervene and a potential delay in the case. (ECF 68 on 7; *id.* at 8 (citing *Katz v. Carte Blanche*

*Corp.*, 496 F.2d 747, 762 (3d Cir. 1974) (stating that where a defendant waives the protection of early class certification ruling, the defendant "would lose . . . the collateral estoppel effect against the class of a favorable judgment on liability"))). Additionally, the Intervenors argue that Defendants only engaged in settlement negotiations that lasted, at most, three and a half months. (*Id.* at 4). Defendants, in turn, argue that their interests would be impaired because they will not benefit from the bargain of their settlement with Plaintiff. (ECF 91 at 5).

The "most important consideration in deciding whether a motion for intervention is untimely is whether the delay in moving for intervention will prejudice the existing parties to the case." *Lopez-Aguilar*, 924 F.3d at 389-90 (quoting *Nissei Sangyo Am., Ltd. v. United States*, 31 F.3d 435, 439 (7th Cir. 1994)). "Where a stipulated judgment is involved, intervention can prejudice the original parties because the judgment cannot be approved without the intervenor's agreement and because the implementation of its terms will necessarily be delayed." *Id.* at 390 (citation and internal quotation marks omitted).

"As a practical matter, however, none of [Defendants'] suggested difficulties can be said to be a result of the [Intervenors'] 'delay' in moving to intervene." *Id.* Indeed, Defendants have not explained how they will be prejudiced if the motion is granted. While Defendants' opposition rests on the fact that the motion to intervene was filed after reports of settlement discussions, it does not explain how filing the motion before reports of settlement negotiations would have been less prejudicial to Defendants because "the burden to the parties of reopening the litigation and resuming settlement negotiations would have been the same." *Id.* at 390; *see Nissei Sangyo Am.*, 31 F.3d at 439 (stating that the plaintiff was not prejudiced by intervenor's "delay" because the plaintiff "would have been burdened in precisely the same manner had [the movant's] motion to intervene been filed in July rather than October"). Further, as Intervenors point out, the length of

settlement discussions is not as extensive, nor is the delay in intervening here akin, to the amount

of time courts have found to compel the denial of a motion to intervene. *See United States v. S.*

*Bend Cmty. Sch. Corp.*, 710 F.2d 394, 396 (7th Cir. 1983) (four and half months after entry of

judgment); *City of Bloomington*, 824 F.2d at 535 (eleven months after reports of settlement

discussions which lasted two years); *United States v. Atl. Richfield Co.*, 324 F.R.D. 187, 192-193

(N.D. Ind. 2018) (three years after entry of judgment despite "extensive negotiations").

To the contrary, intervention would permit the parties to supplement an already existing

record with the Intervenors' HTA and accumulator contracts, rather than having to create a new

record entirely. In this regard, the Court is not convinced that filing a separate suit would be less

prejudicial to Defendants, rather than permitting intervention outright. *See Romasanta*, 537 F.2d

at 919 ("[I]ntervention would not prejudice the adjudication of the rights of the original parties,

for [Defendants] knew of the potential liability to this class since the commencement of the class

action, and until October 17th defendant could reasonably expect this liability to be enforced . . .

." (citation omitted)).

Arguably, intervention could be prejudicial to Plaintiff, who was able to reach a

settlement and who might be forced back into the suit if intervention is permitted. Indeed,

Defendants state that intervention would preclude Plaintiff, too, from benefitting from the

bargain of their settlement agreement. (ECF 91 at 5).[9] However, Defendants do not explain how

intervention would preclude the parties from pursuing a settlement after intervention, especially

given that the Schwartz Intervenors have admitted they would not oppose settlement after being

permitted to intervene. (*See* ECF 88 at 8 ("The Intervenors take no issue with the settlement

---

[9] The Schwartz Intervenors argue that the stipulation to dismiss would be subject to higher scrutiny by the Court
since this case is a putative class action and the settlement would have to be approved. (ECF 88 at 6, 15). While the
Court will not decide the issue at this juncture, it notes that, if true, this would also favor intervention and undermine
Defendants' argument that the stipulation to dismiss is self-executing.

agreement entered into by Melcher. Nor do they seek to disturb the settlement agreement entered

into by Melcher, thus no attempt to 'bootstrap' into the litigation via the settlement."). And in

any event, Plaintiff has not advanced such argument, much less joined in on Defendants'

objection to the motion to intervene. Thus, on this record, it appears unlikely Plaintiff's interests

would be prejudiced due to the Intervenors' delay in bringing forth their motion to intervene. In

conclusion, "[a]ny prejudice to [the parties] is not so great as to justify denying the [Intervenors']

motion[s] to intervene." *Lopez-Aguilar*, 924 F.3d at 390 (citation and internal quotation marks

omitted). The Court finds that the second factor of the timeliness analysis favors intervention.

### 3. Prejudice to the Intervenors if the motion is denied[10]

The Intervenors present a litany of ways in which they will be prejudiced should the

motion to intervene be denied. They first state that "[w]hile it is true that the Proposed

Intervenors could bring their own actions now against CSE and Shepherd," doing so would not

serve judicial economy and would leave the Intervenors "starting at 'square one.'" (ECF 62 at

3).[11] Indeed, they represent that "enormous resources and costs have already been spent in this

matter," and that permitting intervention would obviate the need to "create a new long and

complex record to get to the same issue currently before the Court," that is, the issue of whether

"some or all of the contracts are required to be arbitrated." (*Id.* at 7). They argue that intervention

will permit them to save "hundreds of thousands of dollars having to arbitrate some of the

contracts," if the Court rules adversely on their motion to intervene and avoid having to wait for

additional time while their claim is fully adjudicated." (*Id.*; ECF 68 at 12). Relatedly, and as

---

[10] Because the third factor of the Rule 23(a) analysis will be discussed at length under this section, and because the parties do not particularly mention this factor in their briefs, the Court will omit a discussion of that factor.

[11] To that end, they state that in most cases under Rule 24, a party would be able to bring a new action absent a statute of limitations. (ECF 68 at 12). Therefore, they argue that being able to bring their actions separately should not be denied for this reason. (*Id.*).

already discussed, they point to the fact that they have already deferred intervening from the outset of the case at the request of Plaintiff's counsel (ECF 62 at 2), and that should they file this case anew, additional time will pass and "[e]vidence, memories, recollections, and a host of other facets of litigation [will] fade with time." (ECF 88 at 10).

The Intervenors also state that "this Court has already denied CSE's motion to dismiss," and thus, "the Proposed Intervenors would be beyond the motion to dismiss stage as to what CSE claimed by way of its motion to dismiss and can proceed directly to summary trial." (ECF 62 at 3). However, they assert that they will not be able to pursue summary trial pursuant to 9 U.S.C. § 4 or class certification "unless intervention is granted." (*Id.* at 2).

Defendants, in response, state that the Intervenors' interests will not be impaired "because no class has been certified, [thus] the Proposed Intervenors have no such interest to protect" and that "disposal of this action cannot impair or impede the ability of the Proposed Intervenors to protect whatever interests they may have, which are not a subject of this lawsuit." (ECF 66 at 14). They further point to the fact that the Intervenors admitted they "could bring their own actions now," thus evidencing they will not be harmed by the dismissal of the lawsuit. (*Id.* at 11 (citing ECF 62 ¶ 10)).

In a similar vein, Defendants argue that the Intervenors' arguments conflate "judicial economy" with prejudice to their own interests. (*Id.*). They point to the fact that the Intervenors "assume" that the denial of Defendants' motion to dismiss, or in the alternative stay and compel arbitration, as to Plaintiff would apply to Intervenors' complaint, but that the denial occurred after intensive discovery pertaining to the particular contract between Plaintiff and CSE and that the Intervenors may not "simply bypass a Rule 12 motion and any accompanying discovery regarding their own contracts with CSE." (*Id.*). Thus, Defendants argue that the Intervenors

"have no procedural right to piggyback on motion practice related to a different party's complaint, and they are not entitled to a summary trial on the issue of arbitration." (*Id.* at 11-12; *see id.* ("[T]here is no special exemption that would allow the Proposed Intervenors' complaint to escape Rule 12 motion practice . . . ." (citing *City of Chi. v. Shalala*, 189 F.3d 598, 601-02 (7th Cir. 1999))). Lastly, Defendants state that at least six of the seven Diller Intervenors are already parties to arbitration proceedings before the NGFA where they can litigate their own interests. (*Id.* at 12).

In reply, the Intervenors maintain that "there is no requirement that the intervenor have a direct personal or pecuniary interest" in a case for their interest to be impaired by a denial of their motion to intervene. (ECF 68 at 14 (citing *SEC v. U.S. Realty & Improvement Co.*, 310 U.S. 434, 459 (1940))). They assert that the contracts at issue in this case are "similar if not identical" to Plaintiff's and that both cases involve the same questions of whether the contracts were authorized or bore the Intervenors' signature and whether agreements to arbitrate exist between the parties. (*Id.* at 14-15).

On the issue of timing, the Schwartz Intervenors also suggest that Defendants may be hiding their assets to protect themselves against a potential judgment stemming from this litigation, notably because CSE is now defunct, and that a delay in bringing their claims will hamper their ability to recover a potential judgment. (ECF 88 at 9, 13).

Taking the arguments together, the Court finds that the Intervenors will be prejudiced if intervention is denied. While the Intervenors' admission that they would be able to file a case anew militates against finding that their interests would be impaired should their motion to intervene be denied, other considerations support the opposite conclusion. Indeed, Defendants' arguments against intervention are not persuasive. First, while some of the Intervenors are

currently arbitrating their claims before the NGFA, the crux of their proposed complaint is that

any arbitration clause in the contracts is not operative, or that their contracts are not subject to

arbitration, and as such, they should not be compelled to arbitrate their claims. In this regard,

engaging in arbitration impairs the Intervenors' interests, making arbitration an unsuitable forum

for the pursuit of their claims.

Another reason why Defendants' arguments fall short is that while Defendants assert the

Intervenors may not preempt Rule 12 motion practice by requesting a summary trial, the

contracts and proposed complaints between the parties are virtually the same, and thus, it is

likely the outcome of any motion against the Intervenors' pleadings would be consistent with the

outcome in Plaintiff's case. And regardless, as the Court sees it, the Intervenors would benefit

from having consistency in the adjudication of their claims by the same judge, rather than having

to potentially litigate the issue before another judge, unfamiliar with the complex facts of this

case and the contracts at issue.

The Court is also not persuaded by Defendants' argument that judicial economy should

not be taken into consideration in the calculus of the prejudice to Intervenors. "[T]he decision

whether intervention of right is warranted . . . involves an accommodation between two

potentially conflicting goals: to achieve judicial economies of scale by resolving related issues in

a single lawsuit, and to prevent the single lawsuit from becoming fruitlessly complex or

unending." *Smuck v. Hobson*, 408 F.2d 175, 179-80 (D.C. Cir. 1969) (en banc); *see Trump v.

Wis. Elections Comm'n*, No. 20-CV-1785-BHL, 2020 WL 7230960, at *3 (E.D. Wis. Dec. 8,

2020); § 25 Fed. Proc., L. Ed. § 59:281 (recognizing the promotion of judicial economy as "the

policy of Rule 24"). Judicial economy here, is all the more warranted given the number of

potential intervenors who all have the same claims against Defendants and given that this case began as a putative class action.

Other factors compel the Court's conclusion that the Intervenors' interests will be impaired should intervention be denied. The Intervenors will be prejudiced by the passage of additional time and their potential loss of ability to gather evidence to plead their case. Their ability to collect a judgment should they prevail on their claim will also be hampered as CSE appears to be defunct and as Defendants appear to be dissipating their assets.[12] In sum, the Court finds that the third factor favors intervention because the Intervenors will be prejudiced if they are not permitted to intervene.

   4. <u>Unusual circumstances</u>

Regarding the fourth factor of the timeliness analysis, Defendants argue that the fact that six of the seven Diller Intervenors are presently subject to arbitration proceedings before the NGFA is an unusual circumstance warranting denial of the motion to intervene. (ECF 66 at 14). In response, the Intervenors state that Defendants do not explain how this serves as an unusual circumstance. (ECF 68 at 13). They argue that on the contrary, the fact that the NGFA compelled arbitration against six intervenors favors intervention because the only parties not subject to arbitration is Plaintiff—who is the only party to this lawsuit. (*Id.*). The Intervenors further observe that about less than 20% of the HTA contracts, which contain an arbitration provision, are not signed by either party, and that only one of the accumulator contracts has an arbitration clause. (ECF 88 at 11). They further point to the fact that Defendant Shepherd is not

---

[12] Defendants had a chance to address this point in the surreply to the Schwartz Intervenors' motion to intervene (ECF 91) but did not.

contractually obligated to arbitrate with the Intervenors, and thus that their claims against Shepherd would not be subject to arbitration. (*Id.*).

The Court agrees with the Intervenors that, under the circumstances, the existence of arbitration proceedings would favor granting their motion to intervene. As discussed above, it is precisely because the Intervenors are subject to arbitration that their claims should be adjudicated in this lawsuit, given that they contest that the arbitration provisions in the HTA contracts, or the contracts themselves, are enforceable.[13]

## IV. INTERVENTION AS A MATTER OF RIGHT

Having determined that the Intervenors' motions to intervene are timely, the Court now turns to the remaining factors of Rule 24(a).

### A. Interest in the Property or Transaction Subject of the Action

The second factor of Rule 24(a) is subject to much debate between the parties. The Intervenors, on one hand, state that "[o]ne of the key components to all the litigation is CSE holding the position that arbitration with the [NGFA] is . . . required" under the accumulator and HTA contracts between Defendants, Plaintiff, and the Intervenors. (ECF 62 at 6). They argue that, as is the case for Plaintiff "many of the HTAs are unsigned by both CSE and the Intervenors. Thus, but for these unsigned HTA contracts, there is no agreement to arbitrate." (*Id.*). They further maintain that, just like in Plaintiff's case, the Intervenors dispute that NGFA arbitration is applicable and that Shepherd is an NGFA member and/or has contractually agreed to arbitrate with the Intervenors, criteria which are necessary for a party to be subjected to NGFA

---

[13] The Schwartz Intervenors, on the other hand, argue that this case presents a unicorn situation because there have been virtually no cases decided at this procedural posture, meaning, involving an individual plaintiff, who has brought a class action, settling with a defendant after intervention is sought and before class certification is determined. (*Id.* at 10). The Court acknowledges that fact throughout this Order and will not re-hash those observations here.

arbitration. (*Id.*). They point to the Court's conclusion that the Court "requires an evidentiary hearing on the issue of arbitration," and claim that, accordingly, "it makes sense to allow intervention [to] provide a determination as to whether or not some or none of the contracts are to be arbitrated." (*Id.* at 7; *see* ECF 48 at 13-14). They conclude that "[i]t makes little sense to have the claims against [CSE] be arbitrated by the NGFA and claims of the . . . Intervenors against Larry Shepherd litigated in separate civil litigation." (ECF 62 at 6).[14] In any event, they represent that, independent from the contracts, the Intervenors have an interest in this case as would-be class members.

On the other hand, Defendants oppose the fact that the Intervenors have an interest in this case because they are not part of the specific contract at issue and because no class certification occurred in this case. (ECF 66 at 13-14; ECF 79 at 2).[15]

In reply, the Intervenors assert that the fact that "almost two dozen farmers . . . had the inability to meet grain contracts that CSE created, is unheard of," and that it arose from "the accumulator contracts that were utilized by CSE and Larry Shepherd in conjunction with the rolling practices and empty promises . . . ." (*Id.* at 11-12). They further explain that although Plaintiff's contracts "were separate from the Intervenors['], it is the fact that in most instances the individual accumulators entered into merged or were tied together to provide the requisite

---

[14] The Intervenors represent that Shepherd cannot be subject to arbitration because he "is not an NGFA member and/or has not contractually agreed to arbitrate with the Proposed Intervenors." (ECF 62 at 6).

[15] Defendants further represent that each of the Schwartz Intervenors executed an "Arbitration Services Contract" agreeing to arbitrate before the NGFA, but that "[n]o similar contracts were before the Court on previous motion practice regarding [Plaintiff's] complaint, and these contracts present distinct factual and legal issues." (ECF 91 at 4-5). At the same time, the Schwartz Intervenors argue that "an abysmal percentage, being less than 20% of the HTA contracts are NOT signed by either party. These contracts have an arbitration provision, but there must be an agreement, via execution of the contracts to arbitrate." (ECF 88 at 11). They also contend that Shepherd is not contractually obligated to arbitrate with them, an issue also raised by the Diller Intervenors and Plaintiff. Thus, it appears that there is sufficient overlap between the Schwartz Intervenors' claims and Plaintiff's on the issue of arbitration.

amount of grain to fulfill the consumer accumulator that Larry had put together." (*Id.* at 12). Put differently, "[Plaintiff's] transactions (the contracts) are intertwined with the contracts of the Intervenors under the scheme enacted by CSE and Shepherd." (*Id.*).[16]

"The Supreme Court has embraced a broad definition of the requisite interest, describing it as one which is 'significantly protectable.'" *Lake Invs. Dev. Grp., Inc. v. Egidi Dev. Grp.*, 715 F.2d 1256, 1259 (7th Cir. 1983) (citing *Cascade Nat. Gas Corp. v. El Paso Nat. Gas Co.,* 386 U.S. 129 (1967); *Donaldson v. United States,* 400 U.S. 517 (1971)). "While accepting this broad definition of what constitutes an interest, [the Seventh Circuit] continues to require, however, that the interest be direct and substantial." *Id.* (citing *Meridian Homes Corp. v. Nicholas W. Prassas & Co.*, 683 F.2d 201, 204 (7th Cir. 1982)). "The interest must be a claim to a legally protected right that is in jeopardy and can be secured by the suit." *Aurora Loan Servs., Inc. v. Craddieth*, 442 F.3d 1018, 1022 (7th Cir. 2006) (citations omitted). "[T]he applicant's interest must be one on which an independent federal suit could be based, consistent with Article III's requirement that only a case or controversy can be litigated in a federal court at any stage of the proceeding." *Id.* (citations omitted).

A fundamental flaw of Defendants' argument is that Plaintiff's complaint is not limited to only Plaintiff's contract. Rather, a review of Plaintiff's complaint reveals that it encompasses the claims advanced by the Intervenors, that is, that most if not all accumulator and HTA contracts are fraudulent and many do not have an enforceable arbitration clause, not just Plaintiff's. Even

---

[16] The Swartz Intervenors use the following "pie" analogy to explain the context in which Plaintiff and the Intervenors would enter into accumulator and HTA contracts with Defendants:

> Larry Shepherd would enter into an agreement to sell another entity a pie (i.e. a consumer accumulator). To make the pie, he needed numerous farmers to commit certain amount of the ingredients to make the pie. Once he had enough ingredients from each farmer, he had an entire pie to sell.

(*Id.*).

so, Plaintiff and the Intervenors are pursuing virtually the same claims. (*Compare* ECF 1 at 35-43, *with* ECF 76 at 37-46, *and* ECF 77 at 37-46). The Intervenors' contracts have minor differences with Plaintiff's contract regarding base quantity, delivery period, fixed sales prices, knock out price, pricing accumulation period, and whether they bear a "seller" signature (*compare* ECF 1 ¶ 47, *with* ECF 76 ¶ 52, *and* ECF 77 ¶ 52; *see* ECF 1-1, 76-1, 77-1), but overall contain the same standard language regarding how the terms of the contract interact, and how actual pricing and quantity will be determined under various scenarios (*compare* ECF 1 ¶ 49, *with* ECF 76 ¶ 54, *and* ECF 77 ¶ 54). And while Plaintiff's contract is attached to the complaint (ECF 1-1), it appears it was attached as a "sample" representative of the accumulator "form" contract used by CSE. (ECF 1 ¶ 46).

The Court's March 30, 2023, Opinion and Order (ECF 48) further undermines Defendants' argument that this case is solely based upon Plaintiff's contract. As things stand, Plaintiff alleges, among other things, that CSE's accumulator contracts are fraudulent, but his complaint has not identified "the particular documents of which he is aware that are fraudulent." (*Id.* at 15). Further, by Defendants' own admissions, the contracts are all interdependent because the accumulator contracts, such as Plaintiff's, "are tied to a broader agreement that includes one or more HTA contracts." (*Id.* at 8; *see* ECF 17-1 ¶¶ 7-8). Thus, even if part of Plaintiff's complaint concerns only his contract with CSE, there is sufficient indicia suggesting that his complaint encompasses the contracts complained of by the Intervenors, and thus, that they have "a legally protected right that is in jeopardy and can be secured by the suit." *See Aurora Loan Servs., Inc.*, 442 F.3d at 1022. Going one step further, even assuming Plaintiff's complaint is limited to Plaintiff's contract (which the Intervenors are not parties to), the contracts are so

23

similar that the interpretation of Plaintiff's contract could have *res judicata* ramifications in subsequent litigation regarding the interpretation of the Intervenors' contract.

Notwithstanding the Intervenors' interests in Plaintiff's contract, the Court finds that the Intervenors generally have an interest in this case as would-be class members. Indeed, where a court makes an adverse class determination, it is "entirely proper . . . to permit putative class members . . . to intervene for the purpose of pursuing an appeal of the adverse class action determination." *Romasanta*, 537 F.2d at 919 (citation omitted); *see Ali*, 34 F.4th at 600. The Court deduces that, implicit in this principle, potential class members have an interest in obtaining a class ruling in the first place. Therefore, the Intervenors have an interest in the transaction subject of this action.[17]

### B. Existing Parties as Adequate Representatives of the Intervenors' Interests

To support intervention of right under Rule 24(a), the Intervenors also argue that Plaintiff is not an appropriate representative of their interests, as evidenced by the fact that Plaintiff reached a settlement on his behalf with Defendants, and thus, that "[he] does not intend to continue to advance the interests of the Proposed Intervenors." (ECF 62 at 3; *see also id.* at 7-8). Defendants do not rebut this argument.

Courts "presume adequacy of representation where the interests of the original party and of the intervenor are identical—where in other words there is no conflict of interest." *Lopez-Aguilar*, 924 F.3d at 393 (citations, quotations marks, and brackets omitted). Here, however, "none of the original parties, who jointly requested entry of the Stipulated [dismissal] . . . , share the [Intervenors'] interest in [questioning] the enforceability of the contested [arbitration clause]" in the Intervenors' contracts. *Id*. Indeed, if Plaintiff settled his claims, then whether arbitration

---

[17] Ultimately, even if the Intervenors do not have an interest in Plaintiff's claims, the Intervenors will be permitted to intervene under Rule 24(b), as explained below.

applies to the other Intervenors' contracts does not impact Plaintiff's interests, as Plaintiff would have already been made whole by the settlement. Therefore, Plaintiff's interests appear at odds with the Intervenors' and this factor plainly favors intervention.

## V. PERMISSIVE INTERVENTION

Lastly, the Intervenors argue they are permitted to intervene under Rule 24(b). They state that they "have the same claims" as Plaintiff and that "their claims arise out of the very same type of [accumulator contracts] central to [Plaintiff's] complaint." (ECF 62 at 4). The filing of a proposed complaint confirms the similarity in the parties' claims, as discussed above. (ECF 76, 77). Beyond the similarity in claims, the Intervenors again make a pitch for a "judicial economy" argument, re-iterating that the Court is "already familiar" with the dispute regarding the accumulator contracts utilized by Defendants, a dispute that is doubtless intricate and has already generated a complex record, as acknowledged by the Court. (ECF 62 at 4; *see* ECF 48 at 1-2 (referring to the record as "long and complex")). Defendants state that the Intervenors do not identify with any specificity the common questions of law or fact they have with Plaintiff's complaint.[18] As for judicial economy, they state that the parties have only conducted arbitration-related discovery specific to Plaintiff, not merits discovery nor briefing or resolution of the issue of class certification. (ECF 91 at 5).

The threshold to intervene under Rule 24(b)'s permissive mandate is much more clearly met here. As demonstrated by the fact that the Intervenors have an interest in the transaction subject to Plaintiff's action, the Intervenors' claims raise the same or similar questions of law and fact as Plaintiff's complaint. Those common questions of law or fact include determining

---

[18] Defendants also argue that the Intervenors have not submitted a proposed complaint in accordance with Rule 24(c), and thus, that the Court cannot determine which claims the Intervenors seek to advance. (ECF 66 at 11-12). The Court addressed this issue in its October 24, 2023, Order (ECF 69), and the Intervenors subsequently filed their proposed complaint (ECF 76). Thus, this issue is now moot.

whether the arbitration clauses in the accumulator contracts are enforceable, whether the contracts are subject to the CFTC, and whether they violate the CEA. (*See* ECF 62 at 4; ECF 88 at 14). But more broadly, the Intervenors' claims encompass all the claims put forth in Plaintiff's complaint, so there can be no doubt that the Intervenors' claims raise common questions of law or fact as Plaintiff's. (ECF 76 at 37-46; ECF 77 at 37-46).

As for judicial economy, "[permissive intervention] is just about economy in litigation." *City of Chi. v. FEMA*, 660 F.3d 980, 987 (7th Cir. 2011) (citation and internal marks omitted); *Hartkemeyer v. Barr*, No. 2:20-cv-00336-JMS-DLP, 2020 WL 8084514, at *2 (S.D. Ind. July 8, 2020) (stating judicial economy favors granting motion to intervene); *Fisher v. Gillette Co.*, 505 F. Supp. 184, 186 (N.D. Ill. 1981) ("[T]his Court views intervention as serving the interests of justice and judicial economy . . . ."). Permitting intervention in this case would further judicial economy, as discussed at length above. And while no extensive merits-based discovery has occurred, the Intervenors are seeking a decision on the arbitration issue which has involved significant discovery. Permitting intervention for this reason would promote judicial economy.

In sum, the Court finds that the Intervenors have a common question of law or fact with the main action, *see Babbitt*, 214 F.3d at 945-46, and that intervention would promote judicial economy. On that account, the Intervenors will be permitted to intervene under Rule 24(b).

## VI. CONCLUSION

Accordingly, the Diller Intervenors' first motion to intervene (ECF 61) is DENIED as MOOT. The second motion to intervene filed by the Diller Intervenors (ECF 62) is GRANTED. The motion to intervene filed by the Schwartz Intervenors (ECF 73) is GRANTED. The Diller Intervenors and Schwartz Intervenors are AFFORDED to and including February 15, 2024, to

file their intervenor complaint (ECF 77, 76).

SO ORDERED. Entered this 8th day of February 2024.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge