UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| THEOBALD FARMS, INC, et al | ) |
| Plaintiff, | ) |
| v. | ) CASE NO.1:21 CV 409 HAB-SLC |
| CENTRAL STATES ENTERPRISES, LLC AND LARRY SHEPHERD | ) |
| Defendants. | ) |

**OPINION AND ORDER**

The Plaintiffs, who are farmers cultivating soybeans, corn, and wheat, intervened in a suit originally brought by David Melcher ("Melcher"),[1] against Defendants, Central States Enterprises, LLC ("Central States") and its then-Vice President of Operations, Larry Shepherd ("Shepherd") (ECF No. 94, First Intervenor Compl., "First Intervenors").[2] The First Intervenors, as Melcher did, assert that the Defendants created and enforced fictitious contracts requiring them to deliver grain quantities beyond their grow capacities. They further claim that the motivation for Defendants'

---

[1] Melcher settled his claim with the Defendants and a stipulation of dismissal was filed in the case. (ECF Nos.58, 63). Between the report of settlement and the stipulation to dismiss, the First Intervenors filed their Motion to Intervene (ECF No. 61). The Court addressed the procedural status of the case in ECF No. 101.

[2] There are multiple sets of intervening plaintiffs. This Opinion and Order is directed at the First Intervening Complaint, as amended (ECF No. 183) and includes the following individuals: Theobald Farms, Inc.1 , Kneubhuler Farms, Inc., Rodney Nahrwold, James Hockemeyer, Ridenhour Farms, Inc., Timothy Rorick,, Little River Farms, Inc., Rob Burnau/Burnau Farms, Kelham Farms, Inc., Joe Mailfait Farms, Inc., TLC Farms, Inc., Schlemmer Farms, LLC, Marcarl Farms, Inc., Kees Grain Farms, Inc., Matt Mercer/Mercer Farms, Straley & Son Farms, LLC, Douglas Dealey/Doug Dealey Farms, and Derek Miller/Miller Farms. S.J.K Farms, LLC was originally excluded from the current set of motions but following the Court's granting a motion to dismiss that entity (ECF No. 182) and the filing of the Amended First Intervenor Complaint, the Defendants supplemented their Motion to Dismiss to include S.J.K. Farms, LLC. (ECF No. 185).

conduct came from financial losses Shepherd suffered in speculative trading on the commodities futures market. They bring suit under multiple provisions of Section 6 of the Commodities Exchange Act (CEA) and assert various state law claims.

Before the Court are the Defendants' Motions to Dismiss for Improper Venue, or in the Alternative to Compel Arbitration Under the Federal Arbitration Act, or in the Alternative Motion to Strike. (ECF Nos. 135, 140). The motions are fully briefed (ECF Nos. 136, 141, 153, 155, 176, 185, 187) and ripe for consideration. For the reasons explained below, the Motions to Dismiss for Improper Venue will be DENIED. The requests to stay and compel arbitration will be GRANTED.

## DISCUSSION

**1. Defendants' Motions to Dismiss under Fed. R. Civ. P. 12(b)(3) is Improper**

The Defendants' motions seek dismissal under Fed. R. Civ. P. 12(b)(3) for improper venue or for the Court to stay the action and compel arbitration under Sections 3 and 4 of the Federal Arbitration Act ("FAA"). 9 U.S.C. §§ 3, 4. Since Defendants filed their motions, the Seventh Circuit has stated that a motion under Rule 12(b)(3) is not the proper means of enforcing an arbitration agreement. *Rodgers-Rouzier v. American Queen Steamboat Operating Co., LLC*, 104 F.4th 978, 984 (7th Cir. 2024). "Venue is determined solely by reference to federal law—generally 28 U.S.C. § 1391—not the parties' contractual agreements." *Id.* (citing *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 55-56 (2013)). Because the Court has no basis to dismiss the action for lack of venue, the Court DENIES both Defendants' Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b)(3) (ECF No. 135 and 140) but will consider Defendants' submissions as alternative motions to stay the action and compel arbitration under the Federal Arbitration Act ("FAA").

**2. Standard of Review under the FAA**

2

Under the FAA, if "the parties have an arbitration agreement and the asserted claims are within its scope," the court must compel arbitration and stay the case. *Lathan v. Uber Techs., Inc.*, 266 F. Supp. 3d 1170, 1173 (E.D. Wis. 2017) (citing *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004)); *see also Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985). While "[t]he FAA does not expressly identify the evidentiary standard a party seeking to avoid compelled arbitration must meet[,] ... courts that have addressed the question have analogized the standard to that required of a party opposing summary judgment under Rule 56(e) of the Federal Rules of Civil Procedure: the opposing party must demonstrate that a genuine issue of material fact warranting a trial exists." *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002) (citing cases); *see also Mohammed v. Uber Techs., Inc.*, 237 F. Supp. 3d 719, 725 (N.D. Ill. 2017); *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000). When the parties disagree about the existence of an arbitration agreement, the summary judgment standard supplies the standard of review. *See Tinder*, 305 F.3d at 735. "The court must consider all of the non-moving party's evidence and construe all reasonable inferences in the light most favorable to the non-moving party." *Tickanen v. Harris & Harris, Ltd.*, 461 F. Supp. 2d 863, 866 (E.D. Wis. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (citation omitted). If a non-movant identifies a material factual dispute about whether the parties agreed to arbitrate, the non-movant is entitled to a jury trial on that issue. 9 U.S.C. § 4 ("If the making of the arbitration agreement ... be in issue, the court shall proceed summarily to the trial thereof."); *Scheurer v. Fromm Fam. Foods LLC*, 863 F.3d 748, 751 (7th Cir. 2017).

3. **Background Facts**

The Court assumes the parties' familiarity with prior orders in this case and incorporates by reference the general knowledge of the contracts at issue discussed in this Court's Opinion and

3

Order in *Melcher v. Cent. States Enterprises, LLC*, 2023 WL 2710821 (N.D. Ind. Mar. 30, 2023) ("*Melcher I*") (ECF No. 48). Suffice it to say, this case has grown by leaps and bounds and now involves thousands of commodities contracts some, perhaps all, of which the First Intervenors claim were fictitious. (the "Disputed Contracts"). Fortunately, the Court need not revisit the discussion in *Melcher I* as to the nature of these contracts or their specific contents because the situation of the First Intervenors is sufficiently distinct from that of Melcher that a different outcome results.

Generally, the First Intervenors' allegations mimic those of Melcher. Although this is a gross oversimplification, the First Intervenors contend that the Defendants engaged in a scheme that went something like this: CSE, through Shepherd, placed farmers into sham contracts that they knew nothing about for the delivery of grain in volumes far exceeding these farmers' annual production capacity. Shepherd drafted the Disputed Contracts that, when "effectuated" according to their terms, committed the farmers to delivering grains he knew they could not produce. The Disputed Contracts were back-dated "to have the effect of committing farmers to the delivery of grain in accumulated volumes needed to meet Central States' obligations." The Disputed Contracts each contain an arbitration clause that states: "[I]n the event of a dispute arising hereunder, the parties agree to submit the dispute to the National Grain & Feed Association Trade Rules and/or Arbitration Rules [NGFA]." ("Arbitration Clause"). No surprise, the First Intervenors assert that they did not know anything about the Disputed Contracts and, certainly, did not agree to them or to an arbitration provision.

That said, from late 2021 through early 2023, after the First Intervenors failed to perform under the Disputed Contracts, CSE filed arbitration demands with the NGFA. ("NGFA Arbitration"). (Affidavit of Mark Brickey, ECF No. 136-2, "Brickey Aff. ¶ 24). After each initial

4

demand, the NGFA sent the parties an NGFA Arbitration Services Contract ("ASC") which provides: "The undersigned parties hereby agree to submit the following controversy to arbitration by the National Grain and Feed Association." Each ASC describes the nature of the dispute being submitted and the relief sought by the initiator. The NGFA also solicits an arbitration fee. (Brickey Aff. ¶¶s 25-26). CSE and each of the First Intervenors (or their agents) signed the ASCs with respect to each dispute initiated by CSE, (*Id.*; ECF Nos. 136-5; 136-7; 136-9; 136-11; 136-13; 136-15; 136-17; 136-19; 136-21; 136-23; 136-25; 136-27; 136-29; 136-31; 136-34; 136-36; 136-38; 185-1 at 342), and NGFA arbitrations commenced. Although all the First Intervenors signed the ASCs sent to them authorizing arbitration, counsel for the First Intervenors sent letters to the NGFA (ECF No. 155-32 through 155-37) to dispute the arbitrability of the disputes they agreed to arbitrate.

As the litigation in Melcher evolved, the First Intervenors sought a stay of the arbitration proceedings pending the outcome of the Melcher matter. Nonetheless, what is clear is that the parties began arbitration proceedings in front of the NGFA pursuant to the signed ASC's (Brickey Aff. ¶¶ 27-28). Those proceedings were in varying stages at the time the First Intervenor Complaint was filed. After the First Intervenors sought a preliminary injunction to enjoin the arbitration proceedings, the NGFA stayed the arbitrations (ECF No. 86). The First Intervenors have refused to proceed any further with the arbitrations.

4. **Request to Stay and Compel Arbitration by CSE**

The FAA "governs the enforcement, validity, and interpretation of arbitration clauses in commercial contracts in both state and federal courts." *Jain v. de Mere*, 51 F.3d 686, 688 (7th Cir. 1995). The FAA was enacted to replace "widespread judicial hostility" to the enforcement of arbitration agreements with "a liberal policy favoring arbitration." *AT & T Mobility LLC v.*

*Concepcion*, 563 U.S. 333, 339 (2011). The FAA thus "sweeps broadly, 'requiring courts rigorously to enforce arbitration agreements according to their terms.'" *Wallace v. Grubhub Holdings, Inc.*, 970 F.3d 798, 800 (7th Cir. 2020) (quoting *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018)).

Arbitration agreements generally "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 4 of the FAA permits "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States district court ... for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. To compel arbitration under the FAA, this Court must find "[1] a written agreement to arbitrate, [2] a dispute within the scope of the arbitration agreement, and [3] a refusal to arbitrate." *See Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 690 (7th Cir. 2005). The party opposing arbitration bears the burden of establishing why the arbitration provision should not be enforced. *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000); *Wallace*, 970 F.3d at 803. A court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.

Although this case is bursting with complex transactions and facts, the Court is faced with a rather straightforward threshold question: does the First Intervenors signature agreeing to NGFA Arbitration require the Court to stay this action to permit that arbitration proceeding to go forward. The Court concludes it does.

There is no dispute that the First Intervenors signed the ASC and paid their shares of the arbitration fee which authorized the NGFA Arbitrations. There is also no dispute that the NGFA

6

Arbitrations were at various procedural stages when the NGFA voluntarily stayed the arbitrations. So, the First Intervenors, at some level, were participants in the arbitration proceedings. *See* ECF No. 136 at 11.[3] It was only after the First Intervenors sought intervention in the Melcher suit that they sought a stay of the NGFA Arbitrations and ceased their participation.

A party contending that "it is not bound by an agreement to arbitrate" may "simply abstain from participation" in the arbitration proceedings and then later object to the arbitration award. *MCI Telecomms. Corp. v. Exalon Indus., Inc.*, 138 F.3d 426, 430 (1st Cir. 1998); see also *Langlais v. PennMont Benefit Servs., Inc.,* 2012 WL 2849414, at *5 (E.D. Pa. July 11, 2012) ("[A party need not] appear before the arbitrator and raise their substantive jurisdictional challenges in order to preserve them."). But where, as the First Intervenors did here, "a party objects to arbitrability but nevertheless voluntarily participates in the arbitration proceedings, waiver of the challenge to arbitral jurisdiction will not be inferred." *Lucey v. FedEx Ground Package Sys., Inc.*, 305 F. App'x 875, 878 (3d Cir. 2009) (quoting *Kaplan v. First Options of Chicago, Inc.*, 19 F.3d 1503, 1510 (3d Cir. 1994), *aff'd*, 514 U.S. 938 (1995)); see also *Opals on Ice Lingerie v. Bodylines Inc.,* 320 F.3d 362, 368 (2d Cir. 2003) (explaining that "[a]lthough a party is bound by an arbitral award only where it has agreed to arbitrate, an agreement may be implied from the party's conduct .... [and therefore] if a party participates in arbitration proceedings without making a timely objection to the submission of the dispute to arbitration, that party may be found to have waived its right to object to the arbitration" (internal quotation marks and citation omitted)). "A jurisdictional objection, once stated, remains preserved for judicial review absent a clear and unequivocal

---

[3] In its brief, CSE submitted a chart showing the dates CSE initiated each of the NGFA arbitrations, the date it submitted its first argument brief and the dates of the First Intervenors' answer brief. The First Intervenors did not dispute the accuracy of the information in the chart.

waiver." *First Options*, 19 F.3d at 1510. Thus, the Court agrees with the First Intervenors that they have not waived any future challenge to arbitral jurisdiction.

By doing so, however, what the First Intervenors have done is firmly entrench themselves in the very arbitral process they sought to avoid by filing suit. Just as they could have opted to abstain from the NGFA Arbitrations and challenged the arbitral award later, so too, because they opted to participate *and made a jurisdictional objection*, they have preserved their right to pursue a judicial challenge to the arbitral award should they disagree with it. But that is not where this case lies procedurally. The Court is not faced with a situation where the First Intervenors seek to vacate an arbitral award that they assert was invalid. They are challenging arbitration in the first instance and that is informed by what they have agreed to. Here, they agreed to arbitrate with the NGFA, albeit under a reservation of rights. But they cannot now assert before this Court that they didn't really make that agreement and short circuit the arbitral process. Accordingly, because the Court finds that at least with respect to the Disputed Contracts that have been challenged[4] in the NGFA Arbitrations, the First Intervenors have agreed to arbitrate, the Motion to Stay is GRANTED as to the First Intervenors claims against CSE.[5]

---

[4] The Court is aware that there may be Disputed Contracts that are not subject to the NGFA Arbitrations because they were not part of the claim submitted to arbitration by CSE. By this Order, the Court intends to stay the entire case as it relates to the First Intervenors and the Defendants.

[5] The First Intervenors urge this Court to come to the same conclusion it did in *Melcher* – that is, that a summary trial was warranted to resolve the disputed facts as to whether Melcher's unequivocal denial that he had signed the Disputed Contracts invalidated the arbitration clause in those contracts. *See Tinder v. Pinkerton Security*, 305 F.3d 728, 735-36 (7th Cir. 2002) (suggesting that, while plaintiff's statement that she does not remember receiving or signing an arbitration agreement does not create a factual dispute, a plaintiff's unequivocal denial that she received or signed an arbitration agreement is sufficient to create a genuine issue of material fact); *see also Kass v. PayPal, Inc.*, 75 F.4th 693, 704 (7th Cir. 2023) ("When a party denies signing a contract, committing a crime, or doing anything else, the denial is an assertion of fact. And far from being conclusory, such a denial can create a genuine issue of fact."). Unlike here, there was no assertion in *Melcher* that Melcher had agreed to arbitration with the NGFA. It is true that the First Intervenors dispute their signatures on some of the Disputed Contracts just like Melcher. But, unlike Melcher, they also clearly agreed, at least with respect to the disputes CSE initiated with the NGFA, to participate in the NGFA Arbitrations.

5. **Request to Stay and Compel Arbitration by Shepherd**

Shepherd also moves to stay the case and compel arbitration. He generally adopts the arguments made by CSE to stay the proceedings and compel arbitration but makes no mention of the NGFA Arbitrations – which led to this Court's decision above to stay the claims between the First Intervenors and CSE. Shepherd's motion focuses solely on the underlying Disputed Contracts and asserts that if the Court finds that CSE and the First Intervenors agreed to arbitrate in the Disputed Contracts, he should be included in the arbitration because of the doctrine of equitable estoppel. "Generally, in the arbitration context, equitable estoppel allows a non[-]signatory to a written agreement containing an arbitration clause to compel arbitration where a signatory to the written agreement must rely on the terms of that agreement in asserting its claims against the nonsignatory." *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 590 U.S. 432 (2020) (quotation and citation omitted). Based on this principle, Shepherd asserts that it is entitled to the protections of the arbitration provision to which the First Intervenors and CSE agreed in the Disputed Contracts.

At this point in the litigation, Shepherd's motion is premature. As the Court set out above, given the ASCs among the First Intervenors and CSE, the Court has stayed the claims pending the NGFA Arbitrations. With the stay in place, the Court has not made any determination as to whether the parties agreed to arbitrate in the Disputed Contracts and may not need to. Rather, that assessment would occur, in theory, post-arbitration if the First Intervenors seek to vacate the arbitral award consistent with their reservation of rights. Accordingly, the Court GRANTS the request to stay the First Intervenor's claims against Shepherd but DENIES the motion to compel arbitration as premature.

## **CONCLUSION**

Based on the above, the Defendants' Motions to Dismiss (ECF Nos. 135, 140) pursuant to Fed. R. Civ. P. 12(b)(3) are DENIED. CSE's Alternative Motion to Stay and Compel Arbitration is GRANTED (ECF No. 125). Shepherd's Alternative Motion to Stay and Compel is GRANTED in PART and DENIED in PART. The First Intervenor's claims are STAYED against all Defendants until the conclusion of the NGFA Arbitration.

SO ORDERED on March 25, 2025

                                                s/ *Holly A. Brady*
                                                CHIEF JUDGE HOLLY A. BRADY
                                                UNITED STATES DISTRICT COURT